**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH MAYERCHECK,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08- 1112** |
| | ) | **Judge Gary L. Lancaster** |
| | ) | **Mag. Judge Lisa Pupo Lenihan** |
| **JUDGES OF THE SUPREME COURT** | ) | |
| **OF PENNSYLVANIA,** *et al.*, | ) | |
| **Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.      Recommendation

Pending before this Court for consideration are the defendants' motions to dismiss the

plaintiff's complaint. Joseph Mayercheck ("Plaintiff"), acting *pro se*, brought this action against the

Justices of the Supreme Court of Pennsylvania ("Supreme Court"); the Judges of the Superior Court

of Pennsylvania ("Superior Court"); Judge Christopher Feliciani of the Court of Common Pleas of

Westmoreland County, Pennsylvania ("Judge Felciani"); Judge Rita Hathaway of the Court of

Common Pleas of Westmoreland County ("Judge Hathaway"); Master H. Gervase Fajt of the Court

of Common Pleas of Westmoreland County ("Master Fajt"); Attorney William Wiker ("Defendant

Wiker"); Barbara Mayercheck ("Defendant Mayercheck"); and the Disciplinary Board of the

Supreme Court of Pennsylvania ("Disciplinary Board") by filing a Complaint in this Court on

August 8, 2008. (Docket. No.1).[1] In his Complaint, Plaintiff alleges that Defendants conspired

against him to deprive him of his federally protected rights during the litigation of his divorce from

---

[1]      When referenced collectively, the defendants will be referred to as "Defendants".

1

Defendant Barbara Mayercheck.  Plaintiff's complaint seeks a declaration by this Court that would overturn the determination of the Supreme Court regarding distribution of assets and a post-nuptial contract, which Plaintiff alleges was signed by he and Defendant Barbara Mayercheck in May of 2000.  Additionally, Plaintiff also seeks damages in excess of ninety-eight million dollars under eighteen separate counts, including federal civil rights claims under 42 U.S.C. §§1983-1986 and common law tort claims.

On September 11, 2008 the Supreme Court, the Superior Court, the Disciplinary Board, Judge Feliciani, Judge Hathaway and Master Fajt filed a Motion to Dismiss, (Doc. No. 8), and Brief in Support. (Doc. No. 9).  Defendant Mayercheck filed a Motion to Dismiss Plaintiff's Complaint, (Doc. No. 23), and Brief in Support (Doc. No.24) on September 25, 2008.  Defendant Wiker filed his Motion to Dismiss Plaintiff's Complaint, (Doc. No. 29), and Brief in Support (Doc. No. 30) on November 18, 2008.  For the following reasons, it is respectfully recommended that Defendants' motions be granted and Plaintiff's claims be dismissed, with prejudice.

## II.    Report

### A. Factual Background

Plaintiff's Complaint makes several allegations related to the handling of his divorce in the court system of the Commonwealth of Pennsylvania.  While Plaintiff's Complaint is lengthy and convoluted, it appears that his chief complaint is the litigation of his divorce as it pertained to alleged antenuptial contracts between he and Defendant Mayercheck and the distribution of assets. Specifically, Plaintiff argues that he and Defendant Mayercheck signed and executed a divorce contract on May 4, 1999. (Docket No. 1 at ¶18). According to Plaintiff, the contract involved an agreement regarding the distribution of assets. *Id.* Thereafter, Plaintiff alleges, Defendant

Mayercheck had a second contract, identical to the first, drafted by an attorney, which was signed and executed by both parties on May 23, 2000. *Id.* at ¶19. Plaintiff alleges that this contract was filed with the prothonotary in the Court of Common Pleas of Westmoreland County. *Id.* According to Plaintiff, Defendant Mayercheck thereafter withdrew her complaint of divorce. *Id.* at ¶20. She then refiled for divorce in 2002. *Id.* Around this time, Plaintiff alleges, Defendant Mayercheck disrupted Plaintiff's dental practice and as a result, he filed a temporary restraining order on June 7, 2002 to have her permanently removed from his offices. *Id.* at ¶23. He further alleges that Judge Hathaway signed the restraining order, which was filed with the prothonotary. *Id.* Plaintiff contends that Defendant Mayercheck came to his residence on June 10, 2002 informing Plaintiff that the temporary restraining order had been rescinded. *Id.* Plaintiff's complaint states, "[J]udge Rita Hathaway obviously met with [Defendant Mayercheck] and lawyer, Paul Miller, over the weekend, in an *ex parte* illegal violation, to make a new rescinded order."*Id.* According to Plaintiff, he filed a written complaint withe the President Judge of the Court of Common Pleas of Westermoreland County and the Judicial Conduct Board of the Supreme Court of Pennsylvania regarding Judge Hathaway's alleged order to rescind the temporary restraining order. *Id.* at ¶24. Additionally, Plaintiff made Judge Hathaway aware of his complaints and informed the Federal Bureau of Investigation. *Id.*

A hearing was held in 2003 regarding the divorce contract. *Id.* at ¶27. Plaintiff alleges that Defendant Mayercheck introduced fraudulent documentation and untruthful testimony in support of her position regarding the contract. *Id.* According to Plaintiff, Judge Hathaway relied on this fraudulent information in finding that the 2003 contract was unenforceable. *Id.* According to Plaintiff, Judge Hathaway denied all of Plaintiff's objections to the proceedings and forced him to

pay Defendant Mayercheck alimony *pendente lite*. *Id.*

Plaintiff alleges that he thereafter appealed Judge Hathaway's decision to the Superior Court of Pennsylvania. *Id.* at ¶28. The appeal was denied. Plaintiff alleges that the Superior Court wrongfully determined that the appeal was interlocutory and not of a final order by Judge Hathaway. *Id.* According to Plaintiff, "[t]he conspiracy now involved the Superior Court in denying Plaintiff not only access to the laws in Pennsylvania but to enforcement of the divorce contract." *Id.*

Further divorce proceedings pertaining to the distribution of assets were handled in the Court of Common Pleas by Judge Feliciani. *Id.* at ¶30. Judge Feliciani appointed Master Fajt to preside over the distribution of assets case. *Id.* at ¶32. Plaintiff alleges that Defendant Mayercheck and her attorney failed to comply with court directives and that Judge Feliciani conspired with Defendant Mayercheck and her attorney (Defendant Wiker) in granting all of Defendant Mayercheck's requests. *Id.* at ¶33. Plaintiff alleges that during the distribution of assets proceedings, Judge Feliciani permitted Defendant Wiker to violate several court orders, including a ruling that there would be no continuances for discovery. *Id.*

Further, Plaintiff avers that Master Fajt issued an order requiring both parties to pay a fee and file their pre-trial statements by March 31, 2006. *Id.* at ¶32. However, according to Plaintiff, Defendant Wiker failed to comply with Master Fajt's orders. *Id.* Plaintiff alleges that, as a result of Defendant Wiker's failure to comply with Master Fajt's order pertaining to the filing of a pre-trial statement, he filed a motion for sanctions against Defendant Mayercheck and Defendant Wiker under 23 Pa.C.S. §1920.33(b). *Id.* at ¶33. Plaintiff alleges that Judge Feliciani permitted Defendant Wiker to file a pre-trial statement on the same day as the support hearing. *Id.* Further, Plaintiff alleges that Judge Feliciani granted Defendant Wiker an extension in discovery in order to obtain

tax returns, despite the fact that said tax returns were previously introduced into the record. *Id.*

Plaintiff claims that Judge Feliciani's decision to grant Defendant Wiker's motions to continue and decision to accept Defendant Wiker's allegedly untimely pre-trial statement are the result of a conspiracy between Judge Feliciani, Defendant Mayercheck and Defendant Wiker. *Id.*

Plaintiff alleges that, in June 2006, Defendant Mayercheck presented her equitable distribution case without filing a pre-trial statement and both Judge Feliciani and Master Fajt permitted her to do so. (*Id.* at ¶34). Further, Plaintiff alleges that Defendant Mayercheck, during the presentation of her case, submitted evidence pertaining to the value of real estate without prior notice to Plaintiff. (*Id.* at ¶35). According to Plaintiff, "[i]n spite of all the legal directives in the law and prior court orders on this issue..." Master Fajt permitted Defendant Mayercheck to proceed with the evidence. *Id.* Additionally, Plaintiff avers that Defendant Mayercheck attempted to present the testimony of an expert witness pertaining to the value of Plaintiff's dental practices. (*Id.* at 36). According to Plaintiff, Master Fajt did not permit this witness to testify at the time of the hearing; rather, he ordered Defendant Mayercheck to file an amended pre-trial order, including the expert witness. *Id.* The expert was permitted to testify at the next hearing. Plaintiff alleges that Master Fajt violated his rights by allowing the expert witness to testify, insofar as Defendant Mayercheck never filed an initial pre-trial order and the expert should be "permanently barred" from testifying. *Id.* Plaintiff complains that the expert's report was inconsistent with his own expert reports and should have been barred. *Id.*

Thereafter, Plaintiff alleges, he sought to have the May 4, 1999 divorce contract enforced. Plaintiff avers that Master Fajt ruled that said contract was unenforceable "without any evidentiary presentation," in violation of Plaintiff's rights. (*Id.* at ¶37). Plaintiff made a complaint to the

Disciplinary Board, which he alleges "fell on deaf ears." *Id.* Plaintiff's complaint alleges that the Disciplinary Board became part of a conspiracy with the Judges of the Court of Common Pleas of Westmoreland County and Defendants Mayercheck and Wiker by failing to address his complaints. *Id.*

Plaintiff's complaint further alleges that, his divorce case was closed on May 15, 2007 by Master Fajt. (*Id.* at ¶38). However, according to Plaintiff, after the case had been closed Defendant Wiker was permitted to address additional issues, including the distribution of Steelers tickets and legal fees. *Id.* Plaintiff alleges that Judge Feliciani reopened the case, in violation of his rights. *Id.* Plaintiff further alleges that, as a result of this litigation, he was "forced" to file "an Emergency Petition for Relief" to the Supreme Court. (*Id.* at ¶39). Plaintiff alleges that his appeals to the Superior Court had been denied, and that the Supreme Court likewise denied his petition for relief. *Id.*

According to Plaintiff, he "exhausted all State Court remedies" available to him and now brings an action in this Court in order to "correct[] all the violations committed by the Pennsylvania State Courts." (*Id.* at ¶39). Furthermore, Plaintiff avers that "if [Master Fajt], upon reopening, finds some corrupt excuse to allot any of wife's legal fees to plaintiff, exceptions would certainly be denied by Judge Feliciani to cover his Constitutional violations ... ." (*Id.* at ¶40).

### B.    Standard of Review of a *Pro Se* Complaint

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure pleadings, and *pro se* in particular, are to be liberally construed. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 322 (3d Cir. 2001)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a complaint *pro se*, the pleadings must

be liberally construed and the Court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name"). Indeed, a *pro se* complaint "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C.     Plaintiff's *Pro Se* Complaint

With the above standard in mind, the Court garners the following allegations from Plaintiff's Complaint. Plaintiff alleges that, during the course of his divorce proceedings, which were litigated in the Court of Common Pleas of Westmoreland County, then appealed to the Superior Court of Pennsylvania, the Supreme Court of Pennsylvania and then finally the Supreme Court of the United States, which denied *certiorari*, he was denied his civil rights in violation of the Civil Rights Act of 1871, 42 U.S.C. §§1983-1986. Plaintiff specifically alleges that all determinations in regard to his divorce from Defendant Mayercheck resulted in judgment in Defendant Mayercheck's favor, including determinations regarding distribution of assets and the enforceability of a post-nuptial agreement between the parties. Plaintiff's Complaint alleges that, by finding in Defendant Mayercheck's favor in the proceedings, Defendants denied him access to the court system, depriving him of his federally protected rights in violation of 42 U.S.C. §1983. Additionally, Plaintiff asserts that said determinations in favor of Defendant Mayercheck were the result of a conspiracy between all Defendants to deprive him of his federally protected rights in violation of 42 U.S.C. §1985. Moreover, Plaintiff alleges that Defendants failed to prevent civil rights violations and seeks damages for said failure under 42 U.S.C. §1986.

In addition to his claims under the Civil Rights Act, Plaintiff invokes the *Bivens* Doctrine and well as several common law tort actions, including civil conspiracy and fraud, intentional

infliction of emotional distress, negligent infliction of emotional distress and tortious interference with contractual and/or business relations. Like his civil rights claims, Plaintiff's *Bivens* and tort claims also allege that Defendants acted in concert in the state court proceedings in order to intentionally deprive him of his money, assets and right to access of the court system during the course of his divorce proceedings.

### D. Discussion

In support of their argument that Plaintiff's Complaint should be dismissed, Defendants all argue that this Court is divested of jurisdiction over this matter by the *Rooker Feldman* Doctrine and the "domestic relations exception" to federal jurisdiction. (*See* Docket Nos. 9, 24 and 31). Additionally, the Disciplinary Board, Judge Hathaway, Judge Feliciani, Master Fajt, the Superior Court and the Supreme Court argue that this Court lacks jurisdiction over Plaintiff's claims under the Eleventh Amendment of the United States Constitution, insofar as they are not "persons" and are immune from suit. (Docket No. 9 at 3).

In addition to their jurisdictional arguments, Judge Hathaway, Judge Feliciani, Master Fajt, the Superior Court and the Supreme Court argue that Plaintiff has failed to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as Plaintiff's suit is barred by the doctrine of absolutely judicial immunity. (Docket No. 9 at 8).

In his response to Defendants' motions to dismiss, Plaintiff essentially reiterates the allegations of his Complaint. Specifically, Plaintiff again alleges that the Judicial Defendants and the Disciplinary Board conspired with Defendant Mayercheck and "carried the conspiracy onward and upward to Appellate review" in their handling of the divorce proceedings and objections and/or appeals thereto. (Docket No. 20 at ¶1). Plaintiff directly responds to Defendants' jurisdictional

arguments, contending that this Court does have jurisdiction, as it is not being asked to review state court decisions. (Docket No. 20 at ¶5). However, Plaintiff's brief then goes on to argue that the case before this Court stems from an underlying "domestic/divorce problem," and that he sought relief for said problem through the Pennsylvania court system, including appeals to both the Superior and Supreme Courts. (Docket No. 20 at ¶5).

1.     **This Court Lacks Jurisdiction Over Plaintiff's Equitable and Civil Rights Claims**

At the outset, the Court notes that Plaintiff's Complaint seeks essentially two types of relief. First, he asks this Court to issue a declaratory injunction that would overturn the state court rulings pertaining to his divorce.(Docket No. 1 at ¶¶42-45). Additionally, he seeks monetary damages for alleged violations of his civil rights and Defendants' alleged tortious conduct. (Docket No. 1 ¶¶83-102). Defendants claim that all of Plaintiff's claims are barred under the *Rooker-Feldman* doctrine and domestic relations exception to federal jurisdiction. Additionally, the Disciplinary Board argues that it is immune from suit under the 11th Amendment of the United States Constitution. For the following reasons, this Court agrees and recommends that Plaintiff's claims be dismissed for lack of jurisdiction.

a.     **Rooker Feldman**

The *Rooker-Feldman* doctrine is a judicially created doctrine, which bars lower federal courts from reviewing certain state court actions. The doctrine arises from the United States Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine is based on the statutory foundation of 28 U.S.C. §1257 and the well-settled understanding that the

Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Associates Partnership v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000). *See also Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir. 1998).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court of the United States clarified the scope of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S.Ct. 1517, 1522 (2005). *See also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir. 2006). Following the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit devised a two-step inquiry for determining whether R*ooker-Feldman* applies to claims brought in federal court. *See In Re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). Specifically, the Court held that a claim in federal court will be barred by *Rooker-Feldman* under two circumstances:

> first, if the claim was actually litigated in state court prior to the filing of the federal action, or second, if the federal claim is inextricably intertwined with the state court adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong. In either case, *Rooker-Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

*Id.*

A federal claim is considered "inextricably intertwined with a state court judgment when "federal relief can only be predicated upon a conviction that the state court was wrong." *Parkview Associates Partnerships v. City of Lebanon*, 225 F.2d 321, 325 (3d Cir. 2000), *cert. denied*, 535 U.S. 1055, 122 S.Ct. 1912, 152 L.Ed.2d 822 (2002); *Taliaferro v. Darby Twp. Zoning Board*, 458

F.3d 181, 192 (3d Cir. 2006); *Exxon Mobil*, 544 U.S. at 293 (holding that the district court is divested of jurisdiction "where it is asked to redress injuries caused by an unfavorable state court judgment"). Moreover, in cases where the plaintiff has alleged federal civil rights claims predicated upon a state court judgment, which would require the district court to attack the judgment of the state court, *Rooker-Feldma*n will likewise apply to bar Plaintiff's claims. *See Logan v. Lillie*, 965 F.Supp. 695, 698 (E.D. Pa. 1997) (citing *Fuller v. Harding*, 875 F.2d 310 (3d Cir. 1989)) (holding that, "the path for correcting a [] state court's decision, even one which assertedly results in the violation of the plaintiff's federal constitutional rights, lies with the state appellate courts and ultimately the United States Supreme Court"). "If it were otherwise, any person dissatisfied with a state ... [judgment] could seek review in the district court under the guise of a federal civil rights violation." *Id.*

Here, Plaintiff's Complaint seeks a declaration from this Court that would render the judgments of Judges Hathaway and Feliciani in the Court of Common Pleas, the Superior Court and the Supreme Court "null and void" and, therefore, said claim for relief falls squarely within the *Rooker-Feldman* framework. *See Rooker v. Fidelity Trust Co.*, 264 U.S. 413, 416 (1923); *Knapper*, 407 F.3d at 580. Specifically, Plaintiff's Complaint avers that, pursuant to the Declaratory Judgment Act, and consistent with Pennsylvania law, this Court should order the following regarding divorce and distribution of assets:

A.    The Pennsylvania State Courts will enforce the May 23, 2000, divorce contract made between Joseph A. Mayercheck and Barbara J. Mayercheck. No court may place their own, personal interpretation on this documents [sic] [.]

B.    Any provisions of the May 23, 2000, divorce contract must be reinstated such as there is to be no support for either party. This requires the return to Joseph Mayercheck all APL support paid to Barbara J. Mayercheck, all health care

payments paid to Barbara J. Mayercheck, all legal fees paid to/for Barbara J. Mayercheck totaling over $90,000.

C.   If above mentioned monies cannot be paid by Barbara J. Mayercheck, then assets given to her in the divorce contract must be given back to Joseph A. Mayercheck of equal value.

D.   Lawsuits initiated by Barbara J. Mayercheck, involving Dollar Bank, must be terminated with all monies returned to Joseph A. Mayercheck and all legal fees paid by Barbara J. Mayercheck. These monies at Dollar Bank were part of the divorce contract and returned …

F.   Since wife did not abide by this divorce contract, and rejected it, all costs incurred by Joseph A. Mayercheck for Master's fees and transcripts are to be paid by Barbara Mayercheck to Joseph A. Mayercheck. Additionally, fees paid by Joseph for Barbara … are to be returned to Joseph by Barbara.

G.   A final divorce decree is to be entered in the State courts in Westmoreland County, Pennsylvania, granted to Joseph A. Mayercheck from Barbara J. Mayercheck …

H.   According to the above referenced contract, Barbara Mayercheck will be responsible for legal fees to enforce the contract since she rejected the enforcement in 2003.

I.   Void Orders by the sham judges such as Rita Hathaway in dismissing the May 23, 2000 divorce contract and Christopher Feliciani reopening the parties [sic] divorce case in order to help his friend, William Wiker. …

(Docket No. 1 at 44).

Indeed, Plaintiff's Complaint explicitly asks this Court to overturn the decisions of the state courts. This Court does not have jurisdiction to do so. *See Id.* at 416; *Exxon Mobil Corp.*, 544 U.S. at 1522 (citing *Rooker*, 264 U.S. at 216) (holding that, as noted in *Rooker*, Congress empowered only the Supreme Court of the United States with appellate authority "'to reverse or modify a state-court judgment'"). Because we have no jurisdiction to review the determinations of the state courts, Plaintiff's Complaint, to the extent that it seeks a declaration overturning the judgments of the state

courts is dismissed.

Moreover, under the second prong of the inquiry set forth by the Court of Appeals in *Knapper*, this Court is divested of jurisdiction of Plaintiff's civil rights and common law tort claims. Here, Plaintiff's claims for relief under the Civil Rights Act and state law tort remedies are inextricably intertwined with the state court proceedings involving the litigation of his divorce. Specifically, while Plaintiff does allege a "conspiracy," the only actual allegations of a conspiracy are his assertions that the state courts conspired with Defendants Mayercheck and Wiker and one another *in entering judgments in favor of Defendant Mayercheck*, in order to deprive him of his civil rights.(Docket No. 1 at ¶¶ 18-40). An allegation of a violation of a federally protected right alone will not be sufficient to overcome the fact that what Plaintiff is, in actuality, asking this Court to do is to review state court judgments. *See Logan*, 965 F.Supp. at 698.

Indeed, Plaintiff's Complaint is predicated on the actions of the state courts in the course of the litigation of his divorce proceedings. Specifically, Plaintiff's Complaint alleges that the state courts made wrongful determinations in regard to evidentiary issues, (Docket No. 1 at ¶¶ 32-38), a temporary restraining order, (Id. at ¶23), judgments regarding a post-nupial contract, (*Id.* at ¶¶27-29),judgments regarding support and alimony, (*Id.* at ¶30), and a final divorce decree. (*Id.* at ¶37). He now asks this Court to nullify these judgments, claiming that they caused him injury under various sections of the Civil Rights Act. (*Id.* at ¶¶ 40-41). This Court would not be able to find that, merely by entering certain judgments, the state courts violated Plaintiff's rights, without attacking said judgments of the state courts. *Cf Marran v. Marran*, 376 F.3d 143, 153-4 (3d Cir. 2004) (holding that *Rooker-Feldman* did not bar claims that the plaintiff's rights were violated under §1983 by investigations of abuse, which were used by the state court, insofar as the claims would not

require the district court to determine that the state court erred in relying on said report). As such, this Court has no jurisdiction over Plaintiff's claims predicated on the underlying divorce proceedings. Moreover Plaintiff's Complaint admits that he exhausted all of his opportunities to fully litigate each of these, with which he disagreed, in the state court system but lost those appeals. Under *Rooker- Feldman*, Plaintiff may not now bring the claims that he lost in state court during the litigation of divorce proceedings into this Court. To do so would be to attempt to appeal the state court's determinations and to attempt to relitigate what has already been fully litigated in the state courts. *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir.2003) (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir.1996)).

    **b.    Domestic Relations Exception**

    Additionally, this Court lacks jurisdiction of Plaintiff's claims under the so-called domestic relations exception to federal jurisdiction. The Supreme Court of the United States has recognized a "domestic relations exception" that "'divests the federal courts of power to issue divorce, alimony and child custody decrees.'" *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). *See also Matusow v. Trans-County Title Agency*, LLC, 545 F.3d 241, 245 (3d Cir. 2008). It is axiomatic that this Court does not have jurisdiction to issue a divorce decree in the Westmoreland County Court of Common Pleas. *Id.* Nor does this Court have jurisdiction to issue an order regarding alimony *pendent lite* or support payments. Like the *Rooker-Feldman* Doctrine, to the extent that Plaintiff's Complaint asks this Court to enter an divorce decree or an order pertaining to alimony and support, the domestic relations exception divests this Court of jurisdiction. Therefore, it is recommended that Plaintiff's Complaint, to the extent it seeks a declaration from this Court regarding his divorce, alimony and

support, be dismissed.

### c. 11th Amendment Immunity

The 11th Amendment of the United States Constitution grants immunity to states from suits in federal court and specifically provides that, "the judicial power of the United States shall not be construed to extend to extend to any suit in equity or law, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. Amend. 11. It has been interpreted "to make states generally immune by suit from private parties in federal court," and applies also to "state agencies and departments." *MCI Telecomm Corp. v. Bell Atlantic of Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). There are three exceptions to 11th Amendment Immunity, which will permit suit against a state or state agency: (1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to en ongoing violations of federal law. *Id.*

The United States Court of Appeals for the Third Circuit has specifically held that the Disciplinary Board of the Supreme Court of Pennsylvania and the Pennsylvania state courts are agencies of the Supreme Court of Pennsylvania and are thus a "arms of the state." *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir.2000) ("All courts and agencies of the unified judicial system ... are part of 'Commonwealth government' and thus are state rather than local agencies"). As arms of the state, the Disciplinary Board and the Superior and Supreme Courts have immunity under the 11th Amendment of the United States Constitution, unless an exception to said immunity applies.

There has been no congressional abrogation of 11th Amendment immunity in this case. Indeed, while Plaintiff has brought claims under the Civil Rights Act, the Supreme Court of the

United States has held that the Civil Rights Act does not abrogate a state's immunity under the 11th Amendment, insofar as states and their agencies are not "persons" subject to suit within the meaning of the Act. *See* 42 U.S.C. §1983*; See also Howlett v. Rose*, 496 U.S. 356, 377, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990); *Will v. Michigan Department of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989); *Quern v. Jordan*, 440 U.S. 332, 343-344, 99 S.Ct. 1139, 1146-1147, 59 L.Ed.2d 358 (1979); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 663, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Nor have the Disciplinary Board or the Superior or Supreme Courts made a "clear declaration that [they intend] to submit [themselves] to federal jurisdiction." Therefore, said agencies have not consented to suit in this Court. *Cf Lombardo*, 540 F.3d at 196 (holding that a state consented to suit in federal court when it voluntarily removed the case from state to federal court). Moreover, in regard to the Disciplinary Board, Plaintiff has sued only the Disciplinary Board and no individual member in their individual capacity. Thus, no exception applies to 11th Amendment Immunity and therefore Plaintiff's claims against the Disciplinary Board should be dismissed for lack of subject matter jurisdiction. *See MCI Telecomm*, 271 F.3d at 503.[2]  Moreover, Plaintiff's claims against the

Superior and Supreme Court, as agencies of the state, are barred under the 11th Amendment.

**2.  Plaintiff has Failed to State a Claim For Civil Rights Violations On Which Relief May be Granted Under Rule 12(b)(6) of the Federal Rules of Civil Procedure**

The Court finds that, even were we to assume that this Court had subject matter jurisdiction

---

[2]

While Plaintiff has asserted claims against the individual judges of the Superior and Supreme Courts in their official capacities, as the Court will discuss *supra*, said claims are barred as said these Judicial Defendants have absolute judicial immunity from suit.

over Plaintiff's civil rights and tort claims, he has failed to state a claim for relief against the remaining Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In order to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2008)).  However, while a court must accept as true all factual allegations contained in the complaint, that same requirement does not apply to legal conclusions. *Id.* at 1949.  Rather, the pleadings must include sufficient factual allegations to support the legal claims.  *Id.* at 1953.  Moreover, "threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).   In determining whether a complaint states a plausible claim for relief under Rule 12(b)(6), the Court is required to "draw on its judicial experience and common sense." *Id.* at 1950 (citing *Twombly*, 550 U.S. at 556). The Court's inquiry is a "context specific task" and it must determine whether the plaintiff has sufficiently pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

          *a.*       *Plaintiff has Failed to State a Bivens Action Claim*

At the outset, the Court will address Plaintiff's alleged *Bivens* action, insofar as he has not sufficiently pleaded a claim against any Defendant under the *Bivens* doctrine. In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court of the United States held that an individual may bring a claim against *federal officers* acting under color of law for violations of the individual's rights under the Fourth Amendment of the United States Constitution.

*Bivens*, 403 U.S. at 397. *See also Shreiber v. Mastrogiovanni*, 214 F.3d 148, 152 (3d Cir. 2000).

Here, while Plaintiff appears to argue that Defendant Mayercheck illegally obtained certain documents from his dental practice, in violation of the *Bivens* doctrine, it is axiomatic that, in order to state a claim under *Bivens*, a complaint must allege that the actions of a federal officer violated his or her Fourth Amendment rights. *See Hartman v. Moore*, 547 U.S. 250, 255 n. 2 (2006) (noting that a *Bivens* action is the federal parallel to a §1983 action against state actors). In this case, Plaintiff has not made a single allegation against a federal agent. As such, he has not pled a plausible claim for relief under *Bivens*, *See Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 544),and his claim should, therefore, be dismissed.

        b.       *Plaintiff's Civil Rights Claims Against the Judicial Defendants are Barred by the Doctrine of Absolute Judicial Immunity*

To the extent that Plaintiff has sued the members of the various state courts in their individual capacities, his claims for money damages must regardless be dismissed, as they are barred by the doctrine of absolute judicial immunity. Under the doctrine of absolute judicial immunity, an individual acting within his or her judicial capacity has absolute immunity in a suit for money damages. *Stump v. Sparkman*, 435 U.S. 349, 356-7 (1978) (quotations omitted ) (holding, that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction").

Plaintiff's Complaint alleges that Judge Hathaway stepped outside of her judicial role in her actions related to his divorce proceedings. (Docket No. 1 at ¶25). Additionally, he argues in his response to Defendants' motions that the state court judges did not have jurisdiction over the

proceedings or to make judgments regarding his divorce. (Docket No. 20 at ¶¶7-8). Plaintiff's

claims, however, are without merit. All of the judicial Defendants, including Judge Hathaway, Judge

Feliciani, Master Fajt, the Judges of the Superior Court and the Judges of the Supreme Court were

acting within their jurisdiction in making all of the determinations that Plaintiff claims violated his

rights. *See* 42 Pa.C.S.A. §931(a), (b); 42 Pa. C.S.A. §742; 42 U.S.C. §722. Indeed, Plaintiff's bare

allegations that the Judicial Defendants failed to follow "clear and settled statutory and case law,"

and thus, they were without jurisdiction to decide the issues related to his divorce are not sufficient.

Rather, Plaintiff is required to allege more than the mere "threadbare" assertion that the Judicial

Defendants lacked jurisdiction and, therefore, are not immune from suit in this matter. See Tombly,

550 U.S. at 555. Plaintiff has failed to plead sufficient facts from which this Court could reasonably

infer that the Judicial Defendants were without jurisdiction in their conduct related to his divorce

and therefore the claims are barred by the doctrine of absolute judicial immunity. *Id.* at 556.

Therefore, because Plaintiff's claim for damages against the judicial Defendants are barred by the

doctrine of absolute judicial immunity, said claims should be dismissed as Plaintiff has failed to state

a claim upon which this Court may grant relief[3].

      c.      *Plaintiff Has Failed to State a Claim under the Civil Rights Act Against*
                 *Defendant Mayercheck and Defendant Wiker.*

As discussed above, all of Plaintiff's civil rights claims against the Judicial Defendants and

the Disciplinary Board fail. Therefore, assuming that this Court has subject matter jurisdiction over

---

[3]The Third Circuit in *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) has ruled that if a court is dismissing a claim pursuant to 12(b)(6) in a civil rights case it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." The court in this matter is recommending dismissal with prejudice and is not recommending a grant of leave to amend because it believes such amendment would be both futile and inequitable.

Plaintiff's claims, the remaining civil rights claims would be those against Defendants Mayercheck and Wiker. However, under Rule 12(b)(6), Plaintiff's civil rights claims against Defendants Mayercheck and Wiker would nonetheless fail, insofar as he has failed to state a plausible claim for relief.

i.      §1983

First, the Court finds that Plaintiff Has Failed to State a Claim Against Defendants Mayercheck and Wiker under §1983. Plaintiff claims that Defendants Mayercheck and Wiker violated his federally protected rights under 42 U.S.C. §1983. Section 1983 provides a civil cause of action for a deprivation of the "rights, privileges, or immunities secured by the Constitution and laws" under color of state law. 42 U.S.C. §1983. Section 1983 provides a remedy where rights created by federal law have been violated. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In order to state a claim under this section, the plaintiff must show that (1) she was deprived of a federal right (2) by an individual acting under color of state law. *Id.* A private person or entity will be considered a "state actor" for purposes of Section 1983 when the interdependence between the state and the private entity or person are "pronounced." *Id.* at 641. Likewise, when a complaint sufficiently alleges that the non-state actors conspired with the state through concerted action, the requisite state action may be present. *See e.g. Panayotides v. Rabenhold*, 35 F.Supp. 2d 411, 419 (E.D. Pa. 1999).

Here, neither Defendant Mayercheck nor Defendant Wiker are alleged to have been acting under color of state law. Nor has Plaintiff pled sufficient plausible facts that Defendants Mayercheck and Wiker conspired with the state actor Defendants sufficient to state a claim for relief. In order to sufficiently plead a conspiracy, Plaintiff is required to show "'a combination of

two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Id.* (quoting *Hammond v. Creative Financial Planning*, 800 F.Supp. 1244, 1248 (E.D.Pa.1992)). *See also Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997) (citing *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974)). A conspiracy claim requires specific allegations "which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Id.*; 42 U.S.C. §1983. "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer*, 968 F.Supp. at 1020. Rather, there must be a showing that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 539 (E.D.Pa.1982) (citing *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 (7th Cir.1980)).

Here again, as discussed above, while Plaintiff alleges a "conspiracy" between the Defendants and alleges that Defendants acted in concert in order to ensure that the divorce proceedings were determined in Defendant Mayercheck's favor, his claims are mere speculation and do not amount to sufficient facts from which this Court could infer conspiracy. In fact, in Plaintiff's Complaint he alleges merely that Judge Hathaway "obviously" held *ex parte* proceedings with Defendants Mayercheck and Wiker in regard to a restraining order, since the restraining order was not granted. (Docket No. 1 at ¶24). Furthermore, Plaintiff merely states that, because the state court judgments were favorable to Defendant Mayercheck in regard to post-nuptial contract and divorce proceedings, there was a vast conspiracy between every person involved, including the appellate courts that reviewed the lower courts' determinations. (Docket No. 1 at ¶¶28-41). Plaintiff's bare

allegations will not suffice for this Court to infer that said proceedings took place or that Defendants Mayercheck and Wiker were ever in improper contact with the Judicial Defendants at any time during the divorce proceedings. *See Iqbal*, 129 S.Ct. at 1949. Because Plaintiff has failed to sufficiently allege a conspiracy between Defendants Mayercheck and Wiker and the state Defendants, he has failed to sufficiently allege that Defendants Mayercheck and Wiker are state actors within the meaning of Section 1983. Therefore, Plaintiff has failed to sufficiently plead a claim against them under Section 1983. *See e.g., McKeesport Hosp. v. Accreditation Council for Graduate Medical Education*, 24 F.3d at 524-25 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).; *Sherry v. Associates of Commercial Corp.*, 60 F.Supp. 2d 470, 474 (W.D. Pa. 1998).

        ii.       §§1985-1986

Furthermore, Plaintiff Has Failed to State a Claim Against Defendants Mayercheck and Wiker under §1985 and §1986 of the Civil Rights Act. In regard to his Section 1985 claims, Plaintiff alleges that Defendants Mayercheck and Wiker conspired with Judge Feliciani and Master Fajt, as well as the Judges of the Superior and Supreme Courts to ensure that the specifics of his divorce favored Defendant Mayercheck and to deprive him of access to the courts. Plaintiff makes allegations that Defendant Wiker was a friend and fellow attorney of Defendants Feliciani and Fajt. (Docket No. 1 at ¶30). Additionally, Plaintiff avers that Judge Hathaway had *ex parte* communications with Defendant Mayercheck and attorney in regard to a restraining order.


42 U.S.C. §1985(2) provides:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from

attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws

42 U.S.C. §1985(2).

Again, as discussed above, the Court finds that, while Plaintiff's Complaint does allege that Defendants conspired with one another in order to obstruct justice and to deny him equal protection of the laws and the ability to present his claims in court, the Court finds that Plaintiff's claims amount to mere speculation and fail to amount to a plausible claim for relief. See *supra*. As such, his claims under Section 1985 should be dismissed.

Likewise, Plaintiff's claim under Section 1986 fails. 42 U.S.C. § 1986 states:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case ...

42 U.S.C. § 1986. The law is clear that, where a plaintiff has failed to state a claim under Section 1985, no claim can exist under Section 1986. *Marino v. Bowers*, 483 F.Supp. 765, 769 (E.D.Pa.1980), *aff'd*, 657 F.2d 1363 (3rd Cir.1981) (citations omitted). Therefore, as Plaintiff has failed to state a claim under Section 1985, he has also failed to state a claim under Section 1986 and said claim should be dismissed.

        d.      *Plaintiff's Remaining State Law Claims Should Be Dismissed for Lack of Jurisdiction*

Finally, because Plaintiff has failed to state a claim for relief under the Civil Rights Act, all that remain are his common law tort claims, assuming this Court has subject matter jurisdiction over any of Plaintiff's claims, all that remain are his common law tort claims. This Court, however, would lack pendent jurisdiction over solely state law claims. Thus again, Plaintiff's claims should be dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966).

**E. Conclusion**

For the foregoing reasons, it is respectfully submitted that Defendants' motions to dismiss (Docket Nos. 8, 23, 29) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service of a copy of this Order to file objections to this Order. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

        By the Court,

        Lisa Pupo Lenihan,
         United States Magistrate Judge

Dated: July 13, 2009

cc:

**JOSEPH A. MAYERCHECK**
10 Thomas Jefferson Court
Irwin, PA 15642

counsel of record